Mr. Cook, you're up first. May it please the Court, good morning. Thank you for this opportunity to present this matter on behalf of Mr. Spurlin. And so I was going to reserve five minutes for rebuttal. Watch your clock and I'll try to help you. Sure, thank you. So essentially there's really two main issues, and other issues, but the two main issues that I think the Court needs to address and really will be what this appeal turns on. First of all, the issue about the consumer expectations test and whether the Navy should be considered a consumer under the law. I think the clear answer to that is no. And secondly, getting over that hump, then we have this issue of the superseding cause instruction, which is an affirmative defense. So once we've gotten through this liability question about the consumer, we're into the superseding cause affirmative defense. Which one do you want to deal with first? I'll go in order. It makes sense to go in order, which is the consumer expectations. So here's my question about the consumer expectations. Sure. You don't object to the district court's instructions on consumer expectation, correct? As it was stated it was correct. There was further error with respect to the- You didn't request a further instruction or didn't request an instruction defining who the consumer was. That's true. What we did was we objected prior to the closing argument because- You objected to their argument. Right. You didn't object to the judge's legal instruction to the jury. That's true. Okay. That's true. And you argued quite to the contrary during your closing argument. You said the Navy's not the consumer. Right. Mr. Sperling is the consumer. Right. So my question here is can we really find that their argument, even if incorrect, is sufficient to reverse in this case? You can because it really is purely a question of law. But you didn't raise it as a question of law. Well, we did. That was the objection. Supervising a trial and supervising somebody's closing argument is an abuse of discretion. But you're trying to turn it back into a question of law, even though you didn't give it to the district court in that form. And I've got a concern about that. Well, as an instruction, it's correct. It wasn't given that way. But the objection was, as a matter of law, the Navy is not- An objection as a matter of law. But the context was trial management. And, frankly, if I were the trial judge, I'd be loath to interrupt. We've settled the instructions. We know what they are. The counsel can argue after that. You didn't like their argument, but I don't see many cases where counsel objects and gets the judge to say, you can't make that argument. You had your opportunity to establish the law. Why should we treat this differently? Well, there would be no interruption because it's an objection before the argument. But still, the judge says to the jury, all right, these guys are going to get up and argue now. I'm going to tell you about the law. They're going to argue the facts. One of the counsels, one counsel, makes an argument that, for purposes of our discussion, we should assume is a misstatement of the law. I think, at best, it's a slight misstatement of the law because the Navy would be entitled to have consumer expectations, but I don't think that excludes Mr. Sperling from also having them. But the judge, nobody objects. We object beforehand, and the judge says, let them argue. I'll straighten out the jury in my instructions. And you never say, judge, you need to instruct them that my guy is the relevant consumer. And so now we're reversing a district judge for not sua sponte, stopping an argument. And I must say, that's why I find the consumer expectations one, with that respect to what the law is on it, a difficult argument. That's why I thought you might start with superseding and intervening cause. Well, the superseding cause, we have to get there once we've gone through the law. You don't get there unless you've beaten a liability. We have to get through liability first. Right, and that's my question on superseding and intervening cause. I must assume for the moment that the instruction is just patently incorrect. But the jury only gets to it if they've already found negligence, right? We're talking about the superseding cause instruction. Yes, I mean, we'd have to get through our... So unless there's some other error, we don't get to that one. Well, right, and consumer expectations isn't the only error we've alleged. Okay, so tell us what the other errors indicate. Well, the other error is in the exclusion of prior deposition testimony, which is an abuse of discretion standard. And what the court held was that it was excluded. Right, it comes up here. It comes up because you couldn't use and you don't appeal about the denial of trying to use the deposition testimony taken for the very same case. Right. So why is it the district court should open up the back door and let you get through it with cases that aren't on all fours? Okay, well, first of all, it's not a back door. I think maybe it's a door right next to the door. Well, it's a back door in that you're trying to say to the district court, okay, you've enforced the fact that we failed to follow the date requirements here by not letting us use the testimony, so we're going to use the testimony sitting on the shelf over here and therefore I gut the order that you've given that tried to enforce the scheduling order. As a trial judge, I wouldn't be any too enthusiastic about reaching out to the side and getting in what you'd like to get in from different cases. We designated those prior depositions 15 months prior to the trial, so this wasn't some sort of scramble to get around the court's order. The reason you pulled them out, though, was that you couldn't use the direct depositions. They were both keyed up and ready to go, and the court sustained objections to the 30B6 deposition taken. In the Sperling case, we also had designated this prior deposition testimony, which was excluded under 403, and I submit that that 403 ruling was error because, number one, the testimony was directly on point. It related to Foster Wheeler's knowledge of asbestos hazards, his use of asbestos-containing materials within their boilers, the fact that there was no alternative available for boilers. It may have been quite relevant, but the judge didn't exclude it on relevance grounds. He excluded it on 403 grounds, and he said, now we're going to get into a fight because your friends on the other side are going to get up and say, well, we're entitled to show how the facts in those cases were different and why the testimony related to those facts, and then you're going to get up and show why the facts were the same, and I'm not going to do this. I'm not going to get into a side trial about what was the context of the testimony in other cases. We review that decision with enormous deference, don't we? Well, it's an abuse of discretion standard, but it still has to be applied with respect to the applicable legal standards. Well, the argument you give us, at least in your opening brief on this issue, never mentions Rule 403. It's mentioned earlier in the standard of review, but you never say anything about that ruling in this argument. It mentions 403. I do address 403 in the reply. The opening brief was largely discussing the underlying issues about the admissibility of these prior depositions as admissions of Foster Wheeler statements. And I don't think the judge excluded them on hearsay grounds. The judge excluded them on... I would agree with that. And so the reason I was going through the relevance, the basis of his ruling was 403, and the reason I was discussing relevance, first of all, is that you're weighing the probative value versus the undue prejudice. And what the... Well, 403 is mentioned in the opening brief. Where? In the standard of reviews? Yeah, that's where it is. And it also discusses the relevance, which is part of the 403 standard. Now, with respect to the 403, one of the issues that the court was having was, well, this is going to engage or require an undue consumption of time. And Foster Wheeler has said this both ways, that it's hundreds of pages of deposition testimony. But then we come down to the real truth, which is that it's a handful of designations. And Foster Wheeler comes to that admission in its answer brief, I think at page 29. And essentially, we only have a few snippets out of this testimony. It would have taken less than an hour. And this is generically applicable testimony that Foster Wheeler is talking about the use of asbestos-containing materials with its boilers. It's the same material that's an issue in the Sperling case. You have Foster Wheeler boilers. They're insulated on the headers. They're insulated on downcomers, so there's some external insulation there. There's insulation on the gaskets. Excuse me. There's asbestos in the gaskets,  In other words, these are entry points into the boiler. There's asbestos there. There's asbestos inside the boiler, in the insulation block, which is covered up by firebrick. What I'm having difficulty with is this. The judge says there's plenty of evidence in this case about where the asbestos is inside the boiler. Is there not? Yes, there is. So the judge says now you have a bunch of testimony from their executives about where it is in another case, and we don't need it. What was this testimony going to show that wasn't already in the record in this case? Foster Wheeler's knowledge. That's not in the record, except we get... Surely if they... They never contended that they didn't know asbestos was in the boiler. Well, it depends what period of time... They said we made it purposely that way. It was the way they asked us to. So I'm not sure why knowledge was really an issue in this case. I think a trial judge could say, if that's what you wanted for, there's plenty of evidence of knowledge, and there's no dispute as to knowledge. I just think it'll waste our time. Well, it doesn't come from... Speaking of time, you asked me to remind you. I'm looking at it, yes. So, yes, I'll reserve on that, and we'll see how we go on. Thank you. Mr. Hugo. Good morning. Edward Hugo for Foster Wheeler. I will address two things with the court's permission. The consumer expectation test first, but I'd like to go back, and it is mentioned in the brief, and talk about the applicability of the consumer expectation test. It's Foster Wheeler's position that the consumer expectation test is not at all applicable. Well, let me... The reason that I focused on the context of the way it came up is I'm not sure you're right about that. So let me pose you a hypothetical of the consumer expectation test. I expect, as a pedestrian, that big trucks will have backup lights and backup sounds, and I walk behind a truck that has no sound, and it hits me. I didn't buy the truck, but the case law seems to suggest that the product can be considered defective under a consumer expectation test because, as the injured party, I would have a right to assume that it was made in the way that most other products were made. So I'm not sure you're correct in saying it is only the buyer of a product that can invoke the consumer expectations test. Okay. So the case that they cite on point is Soller, and what Soller says... You may have cited the wrong case. I'm saying I think this is what the law is on that topic. Right, and I'm with you 100% on the question. Soller indicates that the consumer expectation test is inapplicable when the ultimate issue and designed effect calls for a careful assessment of feasibility, practicality, risk, and benefit. That's a different argument, though. See, I think they're a non-made objection. Their objection is when you say the consumer expectation test is inapplicable to somebody like Mr. Sperling because he didn't buy the product. I understand your argument that you win on the consumer expectation test because this was designed to the Navy's specifications, but that's a different thing than what he's objecting to. You're exactly right, and if I can use the analogy that was two ships passing in the night. I'll be with you for, like, another 12 minutes. So with regard to your question, which now I understand, yes, there is an argument that somebody like Mr. Sperling would be the person who benefits from the consumer expectation test, just like the Navy does. So your statement with regard to that is correct. What I was saying it didn't convey is this test is not applicable at all for anybody, period, because a Navy warship is not a product. I argued the McIndoe case to this circuit in 2016 in this courtroom. We have a Navy warship that's not a product. Now the question is, if you don't have a product, how can you have a consumer expectation test applicable when the ultimate issue of design defect calls for a careful assessment of feasibility, practicality, risk, and design? So in our case, the Navy not only designed the warship, the Navy designed foster wheelers, boilers, and all component parts of it. There is not a single person on the planet who would think that a Navy boiler is, quote, an apparently innocuous product, close quote, which is the quote from, again, the Soller case talking about a piece of insulation. This is the heart, literally, of the ship. That's in evidence. It's so big that the ship is built around it. It's two stories of a pressure vessel that could explode, catch fire, kill people regularly. If there's a steam leak and you walk past it without seeing it with your hand open, it'll cut open your hand and cut off your fingers. It's loud. It's hot. It's basically a bomb that has to be tended to 24-7, 365 when it's on. How can an ordinary person have an understanding of the safety of that? They don't, which is completely different than what you were saying. And I 100% buy your analogy. If we're living in this world and walking across the street, you should be able to think that somebody driving your car should have lights on at night or you should have a beep, beep, beep. The court reporter's going to love that. When you're backing up, that's ordinary. Whether you're an ordinary juror, an ordinary person, an ordinary bystander, the consumer who purchased it, everybody's got that understanding. So what I'm trying to find here, and I'm not very good at it, what was the supposedly offending argument that you made? Because there's no objection to instruction. What did you say? I said the Navy was the consumer of the boiler because the Navy is the one that designed it, had specifications that were so specific that it required the incorporation of asbestos materials in it. The Navy inspected the boiler at Foster Willis Facility when it was being manufactured, at the Navy Yard when it was delivered, installation on the ship, sea trials, and commissioning. And they did the same thing with regard to the manual that came with it. There were specifications for the manual. Drafts had to be submitted to the Navy. The Navy had to actually approve the manual. So everything that was sold by Foster Wheeler was sold to the Navy pursuant to their own specifications. And in this case, let me remind you that this was not even Foster Wheeler's design. The Navy required Foster Wheeler in World War II to produce a Babcock and Wilcox boiler for the purpose of putting it on this Rowan because they wanted all of these classic ships to have the same boiler. So they're objecting that I said the Navy was the consumer. They took the position that Mr. Sperling or other seamen would be the consumer. As you pointed out, they never ever gave the judge an instruction to that effect. So they waived it to begin with, and then it became argument. I take it that there's no dispute between you and the other side that we don't get to the superseding and intervening cause instruction unless there's some other error in the case. That is correct. With that, I'll submit on Judge Pataglia's exclusion of the other transcripts under 403. That brings us to the only other remaining issue in this case, which is my motion for sanctions. This court, interestingly, used the term friend when dealing with opposing counsel. I don't have a friend in opposing counsel. Oh, he doesn't view you as much as a friend either. I've got to say I've been doing this long enough. I see lawyers who have been involved in litigation for a long time develop feelings, and they're kind of duking it out, and they've been duking it out for a long time, and they roll into our court and duking it out. One of the nice things about being a court of appeals judge is we don't have to deal with that in the same way as trial courts. So I'm aware of your motion. I'm aware of the motion by your colleague. I won't say friend. I'll say colleague. I'm not sure that any of it helps anybody. You can talk to us if you want to about it. Well, actually, you know, that's pretty much my point. I feel honored to talk to you and argue in front of you. I didn't feel honored to be demeaned by opposing counsel, and the question becomes what are you going to do? This is your court. I mean, I understand I have a right to be here because it's a public forum and to represent my client, but you have all of the power to control what litigants do in this court, and you've just now seen what they did to me. Are you going to allow that? If you don't send a message, apparently the message is, yeah, it works. Bring it on. So if you don't like it, now is the time to stop it. Allow it and it works are two entirely different messages. Unless you have further questions, I will submit. Thank you. Judge Rawlinson doesn't have a question for you. Thank you. Thank you. Very briefly, Your Honor, well, in the couple of minutes I have here. The argument that you heard about consumer expectations just now was completely brand new and it's not in the briefs. In fact, what Foster Wheeler did in the briefs is they conceded that the consumer expectation test was properly instructed. Page 21 of the brief, Foster Wheeler's answer brief. I guess the question is the argument that he made to the jury, I'm not even clear that it was improper. In other words, why wasn't he entitled to argue to the jury that you shouldn't apply the consumer expectations test because this boiler was designed exactly to the specifications of the Navy? Okay, let me try to unpack that. First of all, the consumer expectation test did apply and they conceded that that instruction was properly given. So it would be improper, which they didn't do. Conceded what instruction was properly given? That the consumer expectation test, as phrased by the court, which is the problem is there was no instruction requested or given seeking to tell the jury that the law is what you are arguing that it was. There was no instruction saying the Navy is not the consumer. I agree with that. Well, actually, I think the Navy fairly can be the consumer. The question is whether the sailor can qualify as a consumer. And you would like to have had an instruction that said that, but you didn't request it. The court didn't give it. It was argued by the counsel. Well, that's exactly what the sailor court says. And so that's the second part of the question. The sailor court absolutely instructs that the user, for the purposes of the consumer expectation test, is the worker. It's not the employer. So the sailor case was standard oil employs Mr. Sailor. Mr. Sailor works with insulation that contains asbestos. I'm assuming you're right for a moment about the law. I'm still not sure you've answered Judge Clifton's question, which is that you didn't request an instruction that said that. Counsel may have argued the law incorrectly in his argument. Let's assume that for the moment. Why do you get a bitterly fought and long jury trial reversed simply because counsel made a misstatement of the law during his closing argument? I think we addressed that on my opening comments or that argument. And what I was trying to address was the answering argument from Foster Wheeler, that the consumer expectation doesn't apply at all, which it does. And that's a new argument that wasn't in the briefs. That was the point that I was trying to make. With respect to whether or not the argument that was actually made at trial wasn't that it doesn't apply at all. It was made to the Navy's specifications, and therefore it met consumer expectations. And that's the error. That's why it's improper, because what that does is it takes the – No, I understand it's – I'm saying assume that's a misstatement of the law because a correct and broader statement of the law ought to be that it should be made to the expectations of those who use it also. But you have to demonstrate that had the judge sustained the objection, the verdict probably would have been different. And I just have a very difficult time in the context of this long trial with lots of witnesses concluding that one argument made by counsel in closing, when the jury rejected all of your theories, negligence, other defects, et cetera, would have led to a different result. So that's why I'm – that's my difficulty. Okay. It absolutely was central to the case. And if you look at the special verdict form, question number three, the question is, did Foster Wheeler's product fail to perform as safely as an ordinary consumer would have expected when used in a reasonably foreseeable manner? So had the court sustained our objection to preclude our legal argument, which is wrong as a matter of law, that the Navy could be considered the ordinary consumer? Here's my difficulty with your – I just – we're going around in circles. If this boiler was made in a way that wasn't consistent with the Navy's consumer expectations, it would be defective. And you would be entitled, as the person injured under it, to argue that. So I think they're at least entitled to argue it was made consistent with the Navy's specifications. And then you argued maybe it was, but it wasn't made consistent with my client's specifications. So the problem there is twofold. Those are taking two affirmative defenses and front-loading them at the front of the case. Number one, there's a sophisticated intermediary defense, which is an affirmative defense that the trial court excluded on summary judgment. And which you're not arguing about on appeal. Well, no, because it was excluded. And so – but what happened is – Nobody's arguing on appeal. Right, Foster Wheeler would have had to appeal that, and they did. Secondly, that's the military contractor defense, which is also an affirmative defense, which the jury never got to. It was on the verdict form, but they never got there because they got stuck on the consumer expectations test, which was improperly argued over our objection. Thank you. Appreciate the arguments of the briefing of both counsel. And this case will be submitted, and the court will be adjourned. Thank you, Eric. All rise.
judges: RAWLINSON, CLIFTON, HURWITZ